IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael A. Rice d/b/a            :
C&M Painting Company,         :
           Petitioner          :
                             :
          v.                 :
                             :
Department of Labor & Industry,    :
Office of Unemployment Compensation :
Tax Services,                   :    No. 383 C.D. 2024
          Respondent       :    Submitted: September 9, 2025

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                             FILED: September 30, 2025

       Michael A. Rice d/b/a C&M Painting Company (Petitioner) petitions this Court for review of the Unemployment Compensation (UC) Tax Review Office's (TRO) June 22, 2023 order granting in part and denying in part Petitioner's Petition for Reassessment. There are two issues before this Court: (1) whether this Court should grant Petitioner's Application for Leave to Petition for Review *Nunc Pro Tunc* (*Nunc Pro Tunc* Application); and (2) whether Petitioner established that the workers it paid to paint apartment complexes were independent contractors under the Construction Workplace Misclassification Act (CWMA).[1] After review, this Court denies the *Nunc Pro Tunc* Application and quashes the appeal.

---

[1] Act of October 13, 2010, P.L. 506, 43 P.S. §§ 933.1-933.17.

On September 30, 2015, the Department of Labor and Industry (Department), Office of UC Tax Services (OUCTS) issued a notice of assessment against Petitioner, assessing $46,797.02 in UC contributions, interest, and penalties for 2011 through 2014 under Section 304 of the UC Law (Law),[2] for not paying UC taxes for painters who provided services for Petitioner. At that time, Petitioner was represented by Tilman Larson, Esquire (Attorney Larson), who filed a timely Petition for Reassessment. On June 29, 2018, the TRO conducted a hearing at which Attorney Larson represented Petitioner. Petitioner's relationship with Attorney Larson ended in approximately February 2019. On June 22, 2023, the TRO issued a final decision and order (decision) that partly granted and partly denied Petitioner's Petition for Reassessment. The TRO mailed its decision to Attorney Larson, who did not forward it to Petitioner.

On February 1, 2024, the OUCTS mailed to Petitioner a notice that its federal income tax refund may be reduced or withheld as a result of its failure to pay a balance of $57,112.26 in UC taxes owed (Notice). The Notice required action by April 1, 2024. On February 23, 2024, Petitioner first contacted present counsel (Counsel) to assist in this matter. At that time, Petitioner was unaware that the TRO had ruled on its Petition for Reassessment. On February 27, 2024, Counsel emailed Attorney Larson to determine what adjudication served as the basis for the Notice and whether Attorney Larson had appealed from that adjudication. Counsel also contacted the OUCTS for assistance.

An OUCTS representative informed Counsel of the existence of the TRO's decision, but was unable to provide a copy or a way to contact the TRO.

---

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 784 (An "employer shall file with the [D]epartment such reports, at such times, and containing such information, as the [D]epartment shall require, for the purpose of ascertaining and paying the contributions required by [the Law].").

Counsel resumed attempting to contact Attorney Larson. On March 26, 2024, Attorney Larson finally responded to Petitioner's inquiries and stated that he would search his files for the TRO's decision and associated documents. Attorney Larson provided the requested documents late on April 1, 2024. That same day, being the deadline to respond to the OUCTS's Notice, Counsel responded to the Notice and requested the TRO to reconsider its decision.

On April 5, 2024, Petitioner filed its Petition for Review of the TRO's June 22, 2023 order in this Court. By May 31, 2024 Order, this Court directed Petitioner to file a *Nunc Pro Tunc* Application, and serve it on the TRO on or before June 21, 2024. On June 20, 2024, Petitioner filed its *Nunc Pro Tunc* Application and served it on the TRO. By November 14, 2024 Order, this Court indicated that it would decide the *Nunc Pro Tunc* Application with the merits of the appeal.

### *Nunc Pro Tunc* Application

Initially,

> [*n*]*unc pro tunc* relief may be granted only (1) in circumstances in which a party failed to make a timely filing as a result of a fraud or a breakdown in the court's operations, or (2) where a party, a party's counsel, or an agent of the party has failed to comply with a filing deadline due to non-negligent circumstances. *Criss v. Wise*, . . . 781 A.2d 1156, 1159 ([Pa.] 2001); *Weiman by Trahey v. City of Phila*[.], . . . 564 A.2d 557, 559 ([Pa. Cmwlth.] 1989). Generally, *nunc pro tunc* relief may be afforded only where "extraordinary" circumstances exist to warrant it, and the burden of establishing the existence of such circumstances is on the party seeking *nunc pro tunc* relief. *Harris v. Unemployment Comp*[.] [*Bd.*] *of Rev*[.], 247 A.3d 1223, 1229 (Pa. Cmwlth. 2021); *Weiman*, 564 A.2d at 559.

*Triple Crown Corp., Inc. v. Lower Allen Twp.*, 327 A.3d 748, 754 (Pa. Cmwlth. 2024).

3

This Court has explained:

> Administrative breakdown occurs when an administrative body acts negligently, improperly[,] or in a misleading way. Where non-negligent circumstances cause the untimeliness of an appeal, the appeal must be filed within a short period of time after learning of the untimeliness. It is well settled that the burden of demonstrating the necessity of *nunc pro tunc* relief is on the party seeking to file the appeal, and *the burden is a heavy one*.

*Angels of Care by TLM, LLC v. Dep't of Hum. Servs.*, 323 A.3d 250, 258 (Pa. Cmwlth. 2024) (brackets omitted) (quoting *Harris*, 247 A.3d at 1229) (emphasis added).

Petitioner argues that its late appeal should be considered because it received the TRO's decision late due to both an administrative breakdown and non-negligent circumstances outside of its control, and that it filed an appeal soon after receiving the decision. Specifically, Petitioner contends that the administrative process broke down when the TRO failed to issue a decision for nearly five years after Petitioner attended a hearing, justifying a late appeal. Petitioner cites *Byrd v. Unemployment Compensation Board of Review* (Pa. Cmwlth. Nos. 1231-32 C.D. 2019, filed February 4, 2021), to support its position.[3] Petitioner asserts that at that time, Attorney Larson no longer represented Petitioner and when the TRO sent the decision to Attorney Larson and he did not forward the decision to Petitioner, it constituted non-negligent circumstances that were beyond Petitioner's control and independently justified a late appeal. Petitioner claims that when it learned of the

---

[3] While not binding, unreported opinions of this Court issued after January 15, 2008, may be cited for their persuasive authority pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

potential existence of the decision, it worked diligently to acquire it, and when Petitioner finally obtained the decision, it quickly filed an appeal.

The TRO rejoins that the length of time it took the OUCTS to issue its decision did not constitute an administrative breakdown, nor did it affect Petitioner's ability to receive the decision timely. The TRO maintains that the delay was caused by Petitioner's and Attorney Larson's negligence in failing to notify the OUCTS that Attorney Larson was no longer representing Petitioner. The TRO asserts that this failure led the OUCTS to send Petitioner's copy of the decision to Attorney Larson, who did not forward it to Petitioner until months after the deadline to appeal.

The TRO further retorts that even if this Court finds that non-negligent circumstances caused Petitioner to file its appeal late, Petitioner's *Nunc Pro Tunc* Application should be denied because Petitioner and Counsel unreasonably delayed the filing of the appeal. Specifically, the TRO proclaims that when Petitioner learned that a delinquency had been placed on its UC tax account approximately 63 days before filing its appeal, it knew or should have known that a determination had been issued at that time, yet it did not act on that information for another 22 days. In addition, the TRO maintains that Counsel further delayed the filing of Petitioner's appeal by 28 days due to Petitioner's inactivity. The TRO emphasizes that for 50 of the approximately 63 days that Petitioner knew about the determination, it or Counsel did nothing to obtain the copy that was sent to Attorney Larson.

In *Byrd*, the Department received an initial claim for UC benefits in the case on February 2, 2012.[4] On February 22, 2012, the Department determined the claimant had an eligible discharge from the employer. The record revealed that the Department paid UC benefits for the weeks of February 11, 2012 through August 4, 2012. On January 17, 2013, the Department sent the claimant a UC-1099 form

---

[4] The claimant insisted she never applied for, nor received, UC benefits in 2012, as she was working for employer at that time.

reflecting payments totaling $6,604.00 made to her in 2012. On February 1, 2013, the Department received a change of address for the claimant from a Philadelphia post office box address provided in the initial claim to a street address in Upper Darby. The claimant also submitted an Internal Revenue Service W-4 form to the employer dated April or May 1, 2013, likewise reflecting a change of address to Upper Darby. After receiving the employer's questionnaire response, the Department mailed a series of notices of determination to the claimant in Upper Darby in July 2017, declaring that she was ineligible for the benefits paid in 2012, imposing liability for fault overpayments, and assessing penalties. Claimant did not timely appeal from any of the determinations.

From July 2017 to January 2019, the Department mailed a series of billing statements to the claimant in Upper Darby concerning the fault overpayments. In January 2019, the Department filed a lien against the claimant regarding the fault overpayments. The claimant testified that she first learned of the determinations and the lien when she received a telephone call from a collection agent in February 2019, concerning the lien. She then contacted the Department and provided her current address and telephone number. At that time, she told the Department she had moved several times since 2013, and had not received any of the notices of determination.

On March 5, 2019, the claimant again contacted the Department about the overpayments and recoupment, and the Department told her to file late appeals from the determinations. On March 6, 2019, the claimant filed appeals from the determinations. The Referee dismissed the appeals as untimely, and the UC Board of Review (UCBR) affirmed the Referee's decisions. On appeal to this Court, the claimant asserted that the Department offered no explanation for its delay of five years in investigating the 2012 UC claim. She contended that such a lengthy, unjustified delay constituted an administrative breakdown justifying her appeal *nunc*

6

*pro tunc*. The claimant also insisted that she was not negligent in failing to update her address with the Department because she did not file the 2012 UC claim and, therefore, had no reason to anticipate that the Department would be sending her time-sensitive documents relating to such a claim. She also claimed that, because the Department mailed the notices of determination to an address where she no longer resided, she was improperly denied her right to appeal.

This Court reversed the UCBR's decisions explaining:

> [T]he Department's delay of five years before investigating the 2012 status of [the c]laimant's employment with [the e]mployer did not constitute a prompt examination of the claim as required by Section 501(c) of the UC Law, 43 P.S. § 821(c). In addition, in light of [the c]laimant's denial that she ever filed the 2012 UC claim or received UC benefits under that claim, [this Court] agree[s] with [the c]laimant that the Department's unexplained five-year delay in investigating that claim justifies *nunc pro tunc* relief allowing consideration of the merits of [the c]laimant's appeals[.]

*Byrd*, slip op. at 10.

In contrast to the claimant in *Byrd*, Petitioner herein filed a Petition for Reassessment with the TRO, had not received a decision thereon at the time it separated from its attorney of record throughout the TRO proceedings, and did not inform the TRO of said separation. Because Petitioner initiated the action before the TRO, and Petitioner was aware the TRO had not yet ruled when it separated from Attorney Larson, *Byrd* is inapposite.

While a five-year delay between a hearing and a ruling may appear lengthy, it is not such that it could be considered "a breakdown in the court's operations[.]" *Triple Crown*, 327 A.3d at 754. Notably, the records before the TRO spanned 4 years, 2011 to 2015, and involved 27 individual painters for 2011, 25 individual painters for 2012, 33 individual painters for 2013, and 12 individual

painters for 2014. Under such circumstances, this Court cannot hold that the TRO acted "negligently, improperly[,] or in a misleading way[,]" because it issued its decision five years after the hearing.

Moreover, notwithstanding the five-year delay, at the time Petitioner separated from Attorney Larson, only approximately seven months had passed since the TRO hearing. Clearly, Petitioner knew at that time that a decision was forthcoming and that Attorney Larson was its attorney of record. It was Petitioner's own negligence in not informing the TRO that Attorney Larson was no longer its attorney that caused the TRO to send the decision to Attorney Larson. Accordingly, Petitioner has not met its heavy burden of proving the existence of extraordinary circumstances warranting *nunc pro tunc* relief.

For all of the above reasons, Petitioner's *Nunc Pro Tunc* Application is denied, and Petitioner's appeal is quashed.

_____
ANNE E. COVEY, Judge

8

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michael A. Rice d/b/a | : | |
| C&M Painting Company, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Department of Labor & Industry, | : | |
| Office of Unemployment Compensation | : | |
| Tax Services, | : | No. 383 C.D. 2024 |
| Respondent | : | |

## O R D E R

AND NOW, this 30th day of September, 2025, Michael A. Rice d/b/a C&M Painting Company's (Petitioner) Application for Leave to Petition for Review *Nunc Pro Tunc* is DENIED, and Petitioner's Petition for Review is QUASHED.

_____
ANNE E. COVEY, Judge